**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Joseph Rhodes, ) | No. CV-12-1762-PHX-LOA |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
| Defendant. ) | |

Plaintiff, proceeding *pro se*, seeks review of the Social Security Administration Commissioner's decision denying his application for disability insurance benefits and supplemental security income. The parties, who have expressly consented in writing to proceed before the undersigned Magistrate Judge per 28 U.S.C. § 636(c), have filed briefs in accordance with the Rules of Practice ("Local Rules " or "LRCiv") 16.1. (Docs. 21-23) After review of the record, briefing and applicable law, the decision of the Commissioner is affirmed.

**I. Procedural Background**

In October 2008, Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, respectively, of the Social Security Act. *See* 42 U.S.C. §§ 401-433 and §§ 1381-1383c. (AR[1] 13, 35-36) Plaintiff

---

[1] Citations to "AR" are to the administrative record.

was born on June 3, 1964, and was forty years old on the alleged onset date of his disability. (AR 19) Plaintiff graduated from high school and completed about one year of college. (AR 43) Plaintiff reported in his applications he was unable to work due to a disabling condition beginning on January 2, 2005, and he remains disabled. (AR 129, 133) Plaintiff has identified hidradenitis suppurativa,[2] degenerative disc disease, and spinal stenosis (narrowing of the spinal canal) as the conditions that limit his ability to work. (AR 150)

Plaintiff's applications were denied by the Social Security Administration ("SSA") on April 14, 2009. (AR 79-86) His request for reconsideration was denied on August 5, 2009. (AR 88-94) At Plaintiff's request, a hearing was held on September 7, 2010, before Administrative Law Judge ("ALJ") Earl C. Cates, Jr.[3] (AR 95, 30-74)  In a decision dated September 24, 2010, the ALJ ruled Plaintiff is not entitled to disability benefits because he "has not been under a disability, as defined in the Social Security Act, from January 5, 2005, through the date of this decision." (AR 21, 13-21)

Plaintiff filed a Request for Review of Hearing Decision/Order on November 24, 2010. (AR 6)  On June 16, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1-5)  As a result of the denial, the ALJ's decision became the final decision of the Commissioner of the SSA. (AR 1)

On August 17, 2012, having exhausted the administrative review process, Plaintiff

---

[2] Hidradenitis suppurativa "is a condition in which there are multiple abscesses that form under the armpits and often in the groin area. These areas are a result of local inflammation of the sweat glands. This form of skin infection is difficult to treat with antibiotics alone and typically requires a surgical procedure to remove the involved sweat glands in order to stop the skin inflammation."
*See* http://www.medicinenet.com/hidradenitis_suppurativa (last visited Dec. 20, 2013).

[3] A hearing was first held on May 11, 2010 before ALJ James Seiler. (AR 26-29) Plaintiff requested additional time to seek legal advice, which was granted. (AR 28) Despite the extension, Plaintiff did not retain counsel and was not represented at the second hearing. (AR 32)

sought judicial review of the Commissioner's decision by filing a *pro se* Complaint in this District Court, pursuant to 42 U.S.C. § 405(g). (Doc. 1) The Court granted Plaintiff three opportunities to cure deficiencies in his pleadings, which resulted in the filing of a First, Second and Third Amended Complaint. (Docs. 5-10)  On March 1, 2013, Plaintiff filed an Opening Brief, pursuant to LRCiv 16.1, in which he seeks a remand for an award of disability benefits or, alternatively, a remand for further administrative proceedings. (Doc. 21 at 16-17) On March 29, 2013, Defendant filed an Opposition to Plaintiff's Opening Brief. (Doc. 22)  Plaintiff filed a Reply Brief on April 18, 2013. (Doc. 23)

## II. Applicable Legal Standards

### A. Standard of Review

A district court must affirm the ALJ's findings if they are supported by substantial evidence and are free from reversible error. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998);  *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reddick*, 157 F.3d at 720. In determining whether substantial evidence supports the ALJ's decision, a district court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." *Reddick*, 157 F.3d at 720-21.

### B. Sequential Evaluation Process

To be eligible for social security disability benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The claimant bears the initial burden of proving disability. 42 U.S.C. § 423(d)(5); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). A five step procedure is used to evaluate a disability claim:

> In step one, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). In step two, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). If the answer is no, the claimant is not disabled. If the answer is yes, the Secretary proceeds to step three and determines whether the impairment meets or equals a "listed" impairment that the Secretary has acknowledged to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. At step four, the Secretary determines

whether the claimant can perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. If the claimant meets the burden of establishing an inability to perform prior work, the Secretary must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. 20 C.F.R. § 404.1520(f).

*Reddick*, 157 F.3d at 721.

### III. ALJ Decision

Applying the five-step procedure in this case, the ALJ determined Plaintiff has not engaged in substantial gainful activity since January 2, 2005, the alleged onset date of his disabling condition. (AR 15) The ALJ found Plaintiff has the following "severe" impairments within the meaning of the regulations: degenerative disc disease, hidradenitis and obesity. (*Id.*) The ALJ determined, however, that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 16) As a result, the ALJ assessed Plaintiff's residual functional capacity[4] ("RFC"). (AR 16-19)

The ALJ determined Plaintiff has the RFC to perform the full range of sedentary work and limited light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). (AR 16) He found Plaintiff is able to occasionally lift five to ten pounds with either hand and ten to twenty pounds with both hands; sit for one hour at a time for six to eight hours; and stand

---

[4] The term "residual functional capacity" means the most an individual can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. *See* 20 C.F.R § 404.1545(a)(1-2).

fifteen minutes at a time for up to eight hours. The ALJ found Plaintiff has difficulty walking because his legs rub, which aggravates the skin between his legs. (*Id.*) Consequently, the ALJ found Plaintiff "is more sedentary than light for residual functional capacity." (*Id.*)

In addition, the ALJ determined Plaintiff is capable of performing his past relevant work as a personal investor for a family trust. (AR 19) He further found that even if Plaintiff could not perform his past work as a personal investor, there are other jobs that exist in significant numbers in the national economy Plaintiff can perform, including telemarketer, office helper and receptionist. (AR 19-20) Based on these findings, the ALJ concluded Plaintiff has not been under a "disability," as defined in the Social Security Act, from the alleged date of onset through the date of the ALJ's decision. (AR 21) Consequently, the ALJ ruled Plaintiff is not entitled to disability insurance benefits or supplemental security income. (*Id.*)

**IV. Analysis**

Plaintiff contends in his opening brief that the Commissioner's decision should be reversed and the case remanded for an award of benefits. First, Plaintiff appears to argue that two of his impairments meet or medically equal a listed impairment. Second, Plaintiff argues the ALJ erred by relying on an MRI of his neck, which was not performed on him, and addressing conditions Plaintiff never alleged. Third, Plaintiff argues the ALJ improperly gave Dr. Cunningham's assessment controlling weight, despite this physician's failure to perform a proper exam. Fourth, Plaintiff argues the ALJ committed a procedural error by failing to allow Plaintiff to make a verbal or written closing statement. Lastly, Plaintiff argues the ALJ erred by not including Plaintiff's mental limitations in his RFC assessment.[5] In the responsive

---

[5] At the beginning of his opening brief, Plaintiff identifies seven issues under the heading "Statement of Issues Presented for Review." (Doc. 21 at 1-2) Plaintiff's brief, however, fails to include a discussion or argument pertaining to several of the identified issues. The Court's decision will address only those issues for which Plaintiff presents an actual argument, but not those issues for which he presents no argument or discussion. *See* LRCiv 16.1(a) (requiring, in addition to a statement of the issues, an argument pertaining to each issue). Specifically, the Court will only address the issues discussed in Plaintiff's

brief, the Commissioner disputes Plaintiff's arguments and contends the administrative decision is supported by substantial evidence and free of harmful legal error. The Commissioner requests that the ALJ's decision be affirmed.

**A. Determination Regarding Listed Impairment**

Plaintiff contends in his opening brief, and reiterates in his reply, that the ALJ erred when he concluded Plaintiff's skin condition and his degenerative disc disease do not meet or equal a listed impairment. Plaintiff contends his skin condition, hidradenitis suppurativa, satisfies the description in Section 8.06 of the listed impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 - Listing of Impairments. Plaintiff contends he has had this skin condition since 2004, including at the time of his disability onset date of January 2, 2005, through the date of the hearing on September 7, 2010. He argues the medical evidence shows he was on a continuous program of medication as a result of recurrent "boils, abscesses and deep seated nodules." (Doc. 21 at 12) Consequently, Plaintiff contends the ALJ should have found his skin condition meets the listing for hidradenitis suppurativa.

"Conditions contained in the 'Listing of Impairments' are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) (citing 20 C.F.R. § 404.1520(d)). The claimant bears the burden of proving he has an impairment that meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (footnote omitted).

The relevant listed impairment, set forth in Section 8.06, states:

Hidradenitis suppurativa, with extensive skin lesions involving both axillae,

---

"Summary of Argument" and "Argument" sections of his opening brief. (Doc. 21 at 11-16)

both inguinal areas of the perineum that persist for at least 3 months despite continuing treatment as prescribed.[6]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.06. "Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00(C)(1). Examples include "[s]kin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00(C)(1)(c). To "persist" for at least three months, the longitudinal clinical record must show the "lesions have been at the level of severity specified in the listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00(G).

Here, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (AR 16) Although the ALJ did not expressly refer to the hidradenitis suppurativa listing at Section 8.06, he necessarily found Plaintiff's condition did not satisfy it. The Court finds that decision is supported by substantial evidence in the record.

As the ALJ explained in his decision, Keith Cunningham, M.D., a board certified specialist in internal medicine under contract with the state agency, examined Plaintiff on February 20, 2009, to evaluate the severity of his symptoms. (AR 17) Regarding his skin condition, Plaintiff told Dr. Cunningham he has hidradenitis of the inner groin and that he gets intermittent drainage from open tracks along the scrotum and anus. (AR 17, 278) He reported that he is treated for this condition at the Veteran's Administration Medical Center ("VA") and uses topical skin washes and periodic oral antibiotics. (*Id.*) He told Dr. Cunningham that "currently he is doing well, although he does get occasional tenderness at the base of the scrotum and inner thighs when he is up standing and walking for several hours." (AR 278)

Based on his examination of Plaintiff, Dr. Cunningham diagnosed Plaintiff with

---

[6] "Axillae" means armpits, "inguinal" means groin, and "perineum" means the area between the anus and scrotum. *See* Oxford English Dictionary, http://www.oed.com/ (last visited Dec. 10, 2013).

"hidradenitis, currently under fairly good control, mainly in the inguinal and perineal regions." (AR 279)  Dr. Cunningham further explained:

> Skin exam reveals no hidradenitis of the axillary [armpit] areas. There is mild to moderate changes of the inner leg folds. There is some tracking toward the scrotum. The genitalia and scrotum are not affected. There is mild perianal irritation with a recent tract along the left perianal area which does not have pus and is not actively infected. Digital exam is not done.

(AR 279) In addition, Dr. Cunningham reported Plaintiff independently walked to and from the examination room, and mounted and dismounted the examination table. (AR 17, 279) Dr. Cunningham concluded from his assessment that Plaintiff's condition will not impose any limitations for twelve continuous months. (AR 17, 280) The ALJ assigned Dr. Cunningham's assessment "controlling evidentiary weight." (AR 18)

The ALJ also cited a VA progress note regarding a dermatological examination of Plaintiff on May 11, 2007, in which the dermatologist questioned whether the severity of Plaintiff's condition even warranted a diagnosis of hidradenitis suppurativa. (AR 18, 479) The doctor stated Plaintiff has no true lesions in the inguinal, axillary or perineal areas. (*Id.*)

Finally, Plaintiff has presented no evidence showing a treating physician, or other medical provider, holds a different opinion regarding the effects of his skin disorder. Plaintiff has not identified a medical source statement from a treating, examining or reviewing doctor that states Plaintiff's skin condition rises to the level of a listed impairment. Thus, Dr. Cunningham's medical source statement that concludes Plaintiff's condition is not disabling is medically uncontradicted.

Based on the foregoing, the Court finds the ALJ's determination that Plaintiff's skin condition does not meet the listed impairment at Section 8.06 is supported by substantial evidence in the record. The evidence relied on by the ALJ shows Plaintiff's lesions did not satisfy all the criteria in the listing. The evidence does not show Plaintiff has had lesions in the axillae; it does not show the lesions have seriously limited his ability to ambulate; and it does not show the lesions persisted for at least three months at the level of severity specified in the listing. Accordingly, the Court finds no error.

With regard to the question of whether Plaintiff's back impairment meets the listing at Section 1.04 pertaining to disorders of the spine, the Court finds Plaintiff has failed to meet his burden of demonstrating his impairment meets the listing. *See Burch*, 400 F.3d at 683. In his opening brief, Plaintiff does nothing more than quote a portion of Section 1.04. (Doc. 21 at 12) That is the extent of his claim. Plaintiff cites to no medical evidence in the record, and presents no argument, to explain how his condition satisfies the criteria set forth in Section 1.04. *See* LRCiv 16.1(a)(4) (opening brief in a social security case must contain an argument section in which each contention is "supported by specific reference to the record relied upon and by citations to statutes, regulations and cases supporting Plaintiff's position"). Moreover, even though Defendant addresses this issue in the response brief, Plaintiff fails to even mention it in the reply brief. Plaintiff's mere citation to the listing in his opening brief is insufficient to satisfy his burden. As a result, the Court finds Plaintiff has failed to demonstrate the ALJ erred when he determined Plaintiff's back impairment does not meet or medically equal a listed impairment.

**B. Mistaken Reliance on an MRI in Assessing Plaintiff's Credibility**

Plaintiff next argues the ALJ erred when he mistakenly relied on an MRI that never occurred to support his finding that Plaintiff's credibility was diminished. Specifically, the ALJ stated in his decision "that a July 15, 2009 MRI/MRA examination of the claimant's neck at the John C. Lincoln Hospital revealed no significant evidence of stenosis or aneurysm in the carotid arteries, which further diminishes the claimant's credibility." (AR 18) Plaintiff contends he never had an MRI at that hospital on that date and he has not alleged an impairment based on stenosis or aneurysm in the carotid arteries. Accordingly, he argues the ALJ's adverse credibility finding is erroneous because it relies on inaccurate information.

The Commissioner concedes that the ALJ's factual finding Plaintiff had an MRI of his neck in July 2009 is erroneous. (Doc. 22 at 17)  She argues, however, the error was harmless because the ALJ identified other valid reasons for discounting Plaintiff's credibility. The Commissioner argues the ALJ reasonably evaluated the credibility of Plaintiff's

subjective statements and provided clear and convincing reasons for discounting Plaintiff's credibility.

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). The claimant need only show that his medically determinable impairment could reasonably be expected to produce some degree of the symptom alleged, not "that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if the claimant satisfies this test, and absent any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281.

Further, to determine whether a claimant's testimony regarding the severity of his symptoms is credible, an ALJ may consider the following: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.*

Here, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible

11

to the extent they are inconsistent with the above residual functional capacity assessment." (AR 19) The ALJ also makes several specific findings regarding Plaintiff's credibility. For example, the ALJ found Plaintiff's allegation that he is unable to work due to his impairments is not credible in light of the medical evidence. (AR 16) Among the medical records cited by the ALJ to support this finding is Dr. Cunningham's determination that Plaintiff's skin disorder, back impairment and obesity do not impose limitations that have lasted or are expected to last for twelve continuous months. (AR 280) Thus, according to Dr. Cunningham's assessment, Plaintiff is not disabled. (*Id.*)

The ALJ also found Plaintiff made inconsistent statements regarding his work history. (AR 17) When Plaintiff first applied for disability benefits in October 2008, the only past work he listed was as an animal control officer from 1993 to 1997, a security officer from 1998 to 1999, and a caretaker from 2000 to 2005. (AR 151, 159) He further claimed he stopped working in January 2005. (AR 151) On a subsequent form, Plaintiff stated he worked from 1999 to 2005 as an investment portfolio manager for his family's investments. (AR 227) He elaborated at his hearing and testified the portfolio he managed was worth more than two million dollars. (AR 59) According to Dr. Cunningham's report dated February 20, 2009, Plaintiff told him he had been self-employed as a personal investor for the past six years. (AR 279) The ALJ noted that Plaintiff's statements regarding his work as an investment portfolio manager conflict with his initially stated work history, casting doubt on and diminishing Plaintiff's credibility. (AR 17) Also pertaining to Plaintiff's credibility, the ALJ noted that despite Plaintiff's allegedly disabling impairments, he "lives alone, actively cooks, uses public transportation, pays bills, and has a hobby as a ham radio operator." (AR 18)

Based on the foregoing, the Court finds the ALJ has provided clear and convincing reasons for determining Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms are not credible. The ALJ relied on reasonable techniques of credibility evaluation including the observations of an examining physician, inconsistent

statements by Plaintiff, and Plaintiff's daily living activities. Although the ALJ's reliance on a purported 2009 MRI of Plaintiff's neck was erroneous, such error was harmless and the ALJ's other grounds for discounting Plaintiff's credibility were valid. *See Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.") (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)). The Court, therefore, finds no reversible error in the ALJ's overall determination regarding Plaintiff's credibility.

**C. Assignment of Controlling Weight to Dr. Cunningham's Assessment**

Plaintiff argues the ALJ's decision to assign controlling evidentiary weight to Dr. Cunningham's assessment was erroneous because Dr. Cunningham "did not perform a digit examination" of the skin disorder area. Plaintiff contends a digit exam is important because he has complained of deep-seated nodules that cause pain and difficulty with walking. Plaintiff claims Dr. Cunningham could not properly assess his hidradenitis suppurativa without performing a digit examination. Plaintiff argues the doctor's failure to perform this type of examination diminishes his credibility and should have precluded the ALJ from assigning controlling weight to the doctor's assessment.

Plaintiff offers nothing beyond his own lay opinion to support his claim that Dr. Cunningham should have performed a digital examination. As noted above, Dr. Cunningham wrote in his report that a "[d]igital exam" was not done. His "skin exam," however, allowed him to render the detailed assessment of Plaintiff's skin condition set forth in his report and quoted above. (AR 279)  Plaintiff presented no medical opinion, or any source for that matter, to show a digital exam would have been the best method to assess the severity of Plaintiff's hidradenitis suppurativa. Thus, the Court finds no basis to conclude the ALJ erred is assigning controlling evidentiary weight to Dr. Cunningham's assessment, despite the absence of a digital exam.

**D. Closing Statement During Administrative Hearing**

Plaintiff next contends the ALJ committed a procedural error which denied Plaintiff his right to due process. Plaintiff contends that despite his requests, the ALJ prohibited him

13

from presenting a verbal closing statement at the administrative hearing or submitting a written closing statement after the hearing. Plaintiff claims the social security regulations authorize a claimant to present a closing statement to the ALJ.

The regulation cited by Plaintiff provides:

> You or your representative may present a closing statement to the administrative law judge —
>
> (a) Orally at the end of the hearing,
>
> (b) In writing after the hearing and within a reasonable time period set by the administrative law judge, or
>
> (c) By using both methods under paragraphs (a) and (b).

20 C.F.R. § 405.351.

The Commissioner argues this regulation is inapplicable to Plaintiff because it is part of a new set of regulations implementing a new disability determination process, known as the Disability Service Improvement Process, that applies only in the Boston region. (Doc. 22 at 23-24) That region includes the states of Connecticut, Massachusetts, Maine, New Hampshire, Rhode Island and Vermont only. The Commissioner is correct.

The provision at 20 C.F.R. Pt. 405, Subpt. A, App. provides, "We will apply the procedures in this part to disability claims (as defined in § 405.5) filed in Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, or Connecticut." Part 405 includes the provision regarding closing statements cited above. *See* 20 C.F.R. § 405.351. Because Plaintiff filed his disability claims in Arizona, the regulations in Part 405, including the closing statement provision, do not apply to this case. *See* 20 C.F.R. Pt. 405, Subpt. A, App.

Regulations pertaining to the administrative hearing that apply to Plaintiff's case are found at 20 C.F.R. Ch. III, Pt. 404, Subpt. J, and 20 C.F.R. Ch. III, Pt. 416, Subpt. N (governing social security disability insurance and supplemental security income, respectively). Specifically, 20 C.F.R. § 404.949, which applies to claims for social security disability insurance, provides that a claimant or his representative "may appear before the administrative law judge to state your case, to present a written summary of your case, or to

enter written statements about the facts and law material to your case in the record." The exact same provision is also found at 20 C.F.R. § 416.1449, which applies to claims for supplemental security income. Thus, under the provisions governing Plaintiff's claims, there is no requirement that a claimant be permitted to present a closing statement. *See* 20 C.F.R. § 404.949 and § 416.1449. Plaintiff was permitted to submit a written summary of his case in the form of a Prehearing Statement. (AR 250-257) Moreover, had he been given an opportunity to submit a closing statement, Plaintiff fails to inform the Court what information or evidence Plaintiff would have provided that was not already a part of the record and why that information or evidence would have changed the ALJ's ruling.

Regarding the alleged due process violation, the Supreme Court has held that applicants for social security disability benefits are entitled to due process in the determination of their claims. *See Richardson v. Perales*, 402 U.S. 389, 398 (1971). Administrative adjudications of social security benefit claims must, therefore, comport with due process principles. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990) ("An applicant for social security benefits has a property interest in those benefits."). Due process requires that a social security hearing be "full and fair." *See, e.g., Martise v. Astrue*, 641 F.3d 909, 921–22 (8th Cir. 2011) ("[U]nder the Fifth Amendment, procedural due process requires disability claimants to be afforded a full and fair hearing."); *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir. 2010) ("In the context of a social security hearing, due process requires that the proceedings be full and fair.") (quotations and citation omitted).

As previously mentioned, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch*, 400 F.3d at 679 (citation omitted). The burden of establishing that an error is harmful falls on the party attacking an administrative agency's determination: "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)).

Here, Plaintiff has not established that the ALJ's denial of his request to present a

closing statement at his hearing constituted a denial of due process. Plaintiff has cited no legal authority to support the proposition that due process requires a claimant to have an opportunity to present a closing statement in a social security hearing, and the Court is aware of none. Finally, Plaintiff has not even attempted to argue that the alleged error was prejudicial to his claim for benefits. Plaintiff is silent on that issue. For all of the above reasons, the Court finds no error by the ALJ's denial of Plaintiff's request to present a closing statement.

### E. Exclusion of Mental Limitations in RFC Determination

Lastly, Plaintiff argues the ALJ erred by failing to consider Plaintiff's mental limitations when assessing his RFC. Plaintiff contends the ALJ should have relied on the Psychological Report of Psychologist Ron Lavit, Ph.D, in determining Plaintiff's RFC. Plaintiff claims consideration of Dr. Lavit's report would have resulted in a favorable decision.

Dr. Lavit conducted a psychological examination of Plaintiff on March 16, 2009, and prepared a report. (AR 288-296) He diagnosed no mental disorder. (AR 293) He noted that Plaintiff "has never been hospitalized with a mental health problem, nor has he had any history of mental health treatment." (AR 291) Regarding Plaintiff's mental status, Dr. Lavit found Plaintiff did not exhibit any overt signs of depression or anxiety. (AR 294) Cognitively, Plaintiff appeared intact. (*Id.*) Regarding Plaintiff's overall cognitive functioning, he concluded Plaintiff was in the average range of cognitive ability, with verbal comprehension as his strongest area and perceptual reasoning as his weakest. (*Id.*) Plaintiff's memory testing scores were generally below his cognitive testing scores, with "immediate memory," "immediate auditory," and "immediate visual" showing his lowest scores. (*Id.*)

Based on these findings, Dr. Lavit prepared a Medical Source Statement in which he opined that Plaintiff's condition has or will impose limitations for twelve months. (AR 295) He specifically addressed four categories. With regarding to understanding and memory, Dr. Lavit stated Plaintiff's "[u]nderstanding is intact. Immediate memory seems mildly

16

impaired." Regarding sustained concentration and persistence, he concluded Plaintiff is "[n]ot impaired by psychological issues." Regarding Plaintiff's social interaction, Dr. Lavit noted it was "[a]ppropriate during test administration and interview." Finally, with regard to his adaptation, Dr. Lavit said Plaintiff "[i]s limited by deficits in memory areas/cognitive capacity. His presentation does not suggest emotional factors." Dr. Lavit did not identify any severe impairments or indicate any significant functional limitations. (*See* AR 295)

State agency psychologist David Yandell, Ph.D, reviewed the record and prepared a Psychiatric Review Technique on April 7, 2009. (AR 297) He found Plaintiff's psychological impairments "not severe." Regarding functional limitations, Dr. Yandell found Plaintiff had only "mild" limitations in three of four categories: restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. (AR 307) Regarding the fourth category, episodes of decompensation, Dr. Yandell found there was insufficient evidence to make a determination. (*Id.*)

Based on the above assessments, the Court finds the ALJ properly excluded Plaintiff's mental health status from his RFC determination. Plaintiff did not present evidence he suffers from a mental health impairment that is medically severe, and the assessments of Drs. Lavit and Yandell confirm he does not suffer from such an impairment. Plaintiff focuses on the one statement from Dr. Lavit regarding Plaintiff's condition is likely to impose limitations that will last twelve months. As Dr. Lavit further indicated, however, any limitations imposed by Plaintiff's condition are not significant. Likewise, the limitations identified by Dr. Yandell were "mild." Absent any evidence Plaintiff suffers from a mental health impairment that is medically severe, there was no error by the ALJ's decision to exclude consideration of Plaintiff's mental health from the RFC assessment.

**V. Conclusion**

Based on the foregoing analysis, the Court finds the Commissioner's decision is supported by substantial evidence and is free from harmful legal error.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is kindly directed to enter judgment in favor of the Commissioner and against Plaintiff and terminate this appeal.

Dated this 20th day of December, 2013.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge